PETERS, Judge ad hoc.
This is a suit for the proceeds of a fire insurance policy. Defendant issued a policy covering plaintiff’s store building and contents, affording coverage of $20,000.00 on the building and $40,000.00 on its contents.
The building and contents were completely destroyed by fire on September 22, 1974. It was stipulated by defendant that plaintiff’s loss exceeded the policy limits. Defendant refused to pay under the policy, contending plaintiff breached the insurance contract by failing to put the building’s sprinkler system in working order. The lower court rendered judgment for plaintiff in the amount of $60,000.00, with penalties of twenty-five percent of the judgment and attorney’s fees of $7500.00. The principal issue presented in the court below and on appeal is whether plaintiff breached any condition of the policy which would increase the physical hazard under the policy.
The policy described the building as a “sprinklered building.” Defendant charged plaintiff a lower premium than it would have charged had there been no sprinkler system. The policy contained the following clause:
“K. Fire Protection Clause (applies only when credit in rate is allowed): In consideration of the rate at which this policy is written, it is a condition of this policy that the insured shall:
“1. Exercise due diligence in maintaining in complete working order all equipment and services, which are under the control of the insured, for the detection, prevention, or extinguishment of fire.
“2. Give immediate notice of any impairment in or suspension in any sprinkler system, its water or chemical supplies, or any watchman service, (within the knowledge of the insured) to this company or the Louisiana Rating and Fire Prevention Bureau.
“Failure to comply with the above provision shall suspend the fire insurance as respects the location affected during the time the sprinkler system, its water or chemical supplies, or any watchman service is inoperative.”
Defendant contends the sprinkler system was inoperative at the time of the fire. Plaintiff purchased the insured building from the Georgia-Pacific Corporation in 1969. The building, located in the Town of Urania, had been operated by Georgia-Pacific as a commissary in connection with a Georgia-Pacific sawmill located just outside of town. The sprinkler system in the commissary operated with water from the fire protection system at the sawmill. The fire protection system consisted of a large tank at the mill, into which water was pumped from a pond, with water lines going out in several directions. One line went from the tank into the town of Urania, and the sprinkler system was connected to this line. The sawmill was totally destroyed by fire at least one year before plaintiff’s building burned. After the sawmill fire, the pumps which supplied water to the big tank were abandoned. Subsequent to the sawmill fire, several fire hydrants connected to the abandoned water system were bulldozed over. It is defendant’s position the sprinkler system could *759 not possibly have worked on the night of the fire. Defendant further contends plaintiff knew the sprinkler system was inoperative and did nothing to put it in working order. The Mayor of the Town of Urania testified that Mr. P. A. Paul, a major shareholder in Urania Enterprises, asked him on several occasions before the fire about having the sprinkler system hooked up to the town water supply. He further testified that after the fire, Paul attended a meeting of the town council and threatened to sue the town; Paul blamed the town for not supplying him with a water connection to activate his sprinkler system.
P. A. Paul conceded he had spoken to the Mayor several times about a connection with the town water system but contends the old sawmill system was still supplying water at the time of the fire. Paul had an icemaking machine located in the commissary building and the ice machine’s condenser was connected to the sprinkler system’s water supply line. Paul testified he operated the icemaker on several occasions after the sawmill fire and on all but one occasion the machine’s condenser worked without any problems. He stated on one occasion when the condenser failed to work, he discovered a closed valve near the sawmill on the supply line was responsible. He opened the valve and the water supply returned to the condenser. This was corroborated by another witness. He testified the dirty sprinkler system water was clogging up the condenser and his only reason for wanting to connect the sprinkler system to the town water was to get a supply of clean water. Paul conceded he went to the town council meeting after the fire and threatened to sue the town for his fire loss, but denies the sprinkler system was inoperative at the time of the fire.
We find no manifest error in the lower court award of $60,000 and therefore affirm that award. Although it appears the sprinkler system was not functioning at the time of the fire, the evidence concerning plaintiff’s knowledge of the condition of the sprinkler system was in conflict, and the trial judge could reasonably conclude plaintiff did not know there was insufficient water in the sawmill fire protection system to operate the sprinkler system. Canter v. Koehring, La., 283 So.2d 716 (1973).
However, we must reverse the award of penalties and attorney’s fees. Penalties and attorney’s fees may only be awarded when the insurer’s failure to pay the claim is arbitrary, capricious, or without probable cause. LSA-R.S. 22:658. In the instant case, it appears the insurer reasonably believed plaintiff had breached a condition of the policy and therefore was not entitled to recover. The insurer was entitled to present such a breach as a defense to liability and cannot be ordered to pay penalties and attorney’s fees for its failure to pay.
For the reasons assigned, the judgment of the lower court is hereby reduced to $60,000. All costs of this appeal are assessed against defendant-appellant.
Amended and affirmed.